Thank you, Your Honor. My name is Jeffrey Even here on behalf of Ms. Marenco. And if I may, I'd like to reserve three minutes for rebuttal. The record in this case demonstrates the systemic violence suffered with impunity by Salvadoran women and girls, including the petitioner in this case. Recent decisions of this court and of other circuits reinforce Ms. Marenco's arguments and demonstrate the necessity of a remand to the Board of Immigration Appeals for it to conduct the detailed analysis of the particular social group at issue here. Analysis that neither the board nor the immigration court conducted below. Can I ask you first just a question to clarify? I didn't see any reference to withholding of removal in your brief, either in your opening brief or your reply brief. So we did talking only about the asylum claim? We've argued asylum and we've argued the Convention Against Torture, Your Honor. Okay, but not withholding. That's off the table. That's yes. Okay. All right. Thank you. The petitioner is, in this case, a young woman from El Salvador. And she's established that she's entitled to asylum as a member of the particular social group of Salvadoran women and girls. And she has an alternative social group proposed as well. She's similarly entitled to relief under the Convention Against Torture because the board failed to aggregate the harm that she suffered at the hands of governmental and non-governmental actors. Well, can we reach the aspect of the claim concerning governmental experience at the hospital? Because it seems that the board skipped over that. And wouldn't, therefore, the only thing we could do be to send that back? You both seem to want us to decide it. But if it's skipped, it has to go back, doesn't it? Yes, I agree. Your Honor, I don't want to waive either on the CAC claim or the asylum claim. I really don't want to waive the argument that this court can simply decide the matter. However, I would point out that in Perdomo, which I think is the key case of this circuit, as well as the two cases issued on August 7 that we've provided as supplemental authority, the remedy is to remand. I'd also add that there is a case, an unpublished decision, this circuit issued just last Thursday called Martinez-Mejia, in which that also was the result of a remand. And the panel in that unpublished decision does discuss, to some extent, the argument that had been made by the petitioner that the court could simply decide it. So, I think that strongly suggests that the proper remedy here is to remand. If I may begin with the asylum claim, I think the key case for this court is Perdomo, a decision issued by this court several years ago, in which the court remanded to consider whether the class of women in Guatemala could be a particular social group. We have a similar factual record in this case, and I'd also note that in the unpublished decision that I mentioned just a moment ago, the category was related to El Salvador, women of El Salvador. So, I think we're seeing a pattern of decisions from this court in which if the board does not do the analysis as to whether a social group is cognizable, that this court remands for that purpose. Counsel, what are the implications of identifying a particular social group as broad as women in El Salvador? Does that mean that all women in El Salvador would be entitled to asylum in the United States if we were to recognize that group? Or does it mean that any woman in that for that matter, where the government fails to take immediate action, then would be eligible for asylum in the United States? Well, it's closer to being the latter, Your Honor. There are other elements to the asylum claim besides the social group being cognizable. The applicant has to have suffered persecution or a well-founded fear of persecution, something that's quite well established on the record in this case. And that persecution has to be on account of membership in the particular social group. Right. And clearly, if you've got gangs that are interested in raping people, then it is likely that those are going to be women in El Salvador. So, that would mean that any woman who has been raped or mistreated, a victim of even domestic violence, might have a sound asylum claim in the United States. It's possible. Of course, that's the factual determination case by case. But yes, that is a possibility. Now, this court has been quite clear, including in Perdomo, that the size of the social group does not preclude it from being cognizable. So, we have had a number of cases from this court and from other circuits indicating that gender plus nationality can be a social group. Perdomo, the two cases issued just a few weeks ago, Davila and Diaz-Renoso. I'd also point out that that matter is discussed in Mohammed and Hassan, cases discussing female genital mutilation. In both of those cases, there was a concern raised as to whether this would essentially open the floodgates. I'll suggest we haven't seen that because of a number of factors, maybe a key here being that the social group is only one of several elements that the petitioner has to establish. So, I think those cases, those three, including the two new ones from August 7, are the keys to considering this case. I'd also point into some detail the analysis in Diaz-Renoso, considering the question of whether gender plus nationality could be cognizable as a social group and remanding. The court there compared that class to a class of left-handed people. So, the fact that you could have such a large group potentially cognizable is not a bar to that relief. If there are no further questions for me at this time, I'd like to reserve the balance for rebuttal. All right. Thank you, Mr. Evers. Thank you. I will hear now from Mr. Meyer. Is Mr. Meyer there? Sam, can you check and see if we can get Mr. Meyer back? Yes. Mr. Meyer, if you can hear us, can you please unmute yourself? It doesn't appear to be working. Mr. Meyer, you may need to just hang up and call back in if you're not able to unmute yourself. Okay. Judge, it looks like he is reconnecting. All right. Apologies for the delay. So, Sam, is he still trying to dial back in? Can you tell whether he's trying to get back in? I'm sorry, Judge, I think my mic was muted there. I can't see anything indicating he's reconnecting other than that he left as soon as I mentioned that he do so. Okay. But he should, if I don't hear from him in the next minute, I'll try to call. Okay. You have his number to reach him? Yes. Okay. I'll give him a few more minutes. I just spoke to Mr. Meyer on the phone. He is on his way back. Okay. Okay. Hello, Mr. Meyer, can you hear us? Yeah. Can you hear me now? Yes. Yes. Okay. This looks like there's a little bit of an echo. Mr. Meyer, can you hear us? Yeah, I can hear you fine. Okay. I just want to preface by saying I think what we just experienced is a good illustration of a problem that I know several of us judges have pointed out before, which is that Maine Justice does not use video technology to join arguments. You know, it occasionally happens that other people do, but it's been a pattern at Maine Justice. And I'm not sure why there's an explanation why you can't use video technology. But I wish you would communicate to people back at Maine Justice that it would be helpful if you would join the club and use the same technology that everyone else does. It would be helpful to the court. I thank you. You may proceed. Okay. I'll convey that information, Your Honor. This is Jeffrey Meyer for the respondent. May it please the court. I'm going to assume that the court has read my briefs and is familiar with the argument. I'm just going to address the social group issue. The board did not delve into the particular social groups because it didn't need to. It's simply found that there is no nexus here at all. They said that the, you know, the gangs were motivated by her refusal to comply with their sexual and monstrous demands. So all this discussion about the particular social group, the board's decision does not counsel counsel. If if the particular social group is, as Mr. Even argues, all women in El Salvador, then how could how could how could she fail to follow to fall into that particular social group here when she was raped? Because it wasn't an account of that. It was simply an account of it was not on account of the fact that she was female. Well, she happens to be female, but they're motivated by criminality and sexual desire. Well, surely, surely her her gender was not irrelevant to the gang, was it? I mean, I think the population at large is subject to gang violence. Sure. But how many how many men are being gang raped in in El Salvador? Is there any evidence in the record on that one? No, Your Honor. Then then how then how can we say how can the government take the position that her gender was not the reason that she was raped or or a reason a central reason that she was raped? I think it's because, yeah, you know, the central reason on account of the gang's motivation and that is not that she's female, but that, you know, it's a generalized gang operation. It's extorting. Sure. But if the gang if the gang if the gang is extorting women by threatening rape and men by threatening something else, beatings or or or something else, then it would still be possible to say that that gender was one of the reasons for which she was for which she was raped. Well, I think it's particularly vulnerable given that if race is, you know, the tool for extortion. You know, as opposed to men being less so, you know, but I think, you know, I think the population is targeted at large and, you know, so so so counsel, if I'm going to ask you to assume for this question that that her gender was one reason why she was was what was is does the government have a position on the possibility of a particular social group being all women and girls in El Salvador? Well, thank you. No, I don't have a position on that simply because the board didn't call on that. So when we have to remand if we found that issue to be necessary for resolution? I think so, Your Honor, but I think you can also say that there's clearly no nexus here and that's the board's holding. What about the issue of the Convention Against Torture? It seemed that the briefs below did specifically raise the issue that the behavior of the Salvadoran doctors was a basis of the arrest by the BIA. Yeah, I don't see it mentioned by the BIA either, except that we did talk about it in our brief and we noted that. You skipped over to the merits in your brief, but given that if the BIA overlooked it, don't we just have to send that back for them to re-examine that? Not if it's futile, Your Honor. I mean, you'd have to show that they had the requisite intent to torture. I think they were trying to save her life and the life of the baby. Right, but they were factual and legal issues, and doesn't Ventura say that we don't get to do that in the first instance, that we have to send it back to the agency to evaluate? I don't think it rises to the level of torture. That would be illegal. Again, isn't that something that the board gets to examine in the first instance? I don't think they need to in this case, Your Honor, simply because there's no evidence that they had any intent to torture, rather just to treat her as a patient in the hospital. I don't have anything further. No, I think that's it for me. Thank you. All right. Thank you. And sorry about the length. All right. Thank you. Hi, Mr. Evans. I think you have almost three minutes left. Thank you, Your Honor, and I hope to make three points rather quickly. The first is just to note this idea that rape is motivated by sexual desire. I think it's well established, including in Ali, a case cited in our briefing, that rape is a crime of violence and of domination. It's not primarily about sexual desire. So I think to belittle the harm suffered by Ms. Marenko in this case by referring to it simply as a sex crime diminishes what she has experienced. Second, as to the nexus argument, I'd make two points in response to Mr. Meyer and in response to Judge Bybee's question. The first is that the BIA's analysis of nexus suffers from the same problem as its analysis of a cognizable social group, that is, that it simply stated a conclusion without engaging in analysis. When the BIA adopts the decision of the Immigration Court, as happened here, this court sits in review of both the BIA and the immigration judge's decision. In this case, the immigration judge was somewhat equivocal and did indicate at one point in his oral decision that if gender, and of course we say gender plus nationality, but if gender could be a cognizable social group, that he would conclude that Ms. Marenko was persecuted on that social group, that her gender was a significant factor, motivating factor, the desire of the gangs to show domination and control of women in that society. And I would finally note with regard to the CAD claim that remand is the appropriate remedy there as well for precisely the reasons that underlay Judge Collins' questions. And I'd note that Ms. Marenko was not simply a patient in the hospital. She was a patient who was essentially chemically restrained. She was held under sedation for a matter of months after this rape. This is not ordinarily a medical treatment, but this is rather, in a sense, imprisonment. And given all circumstances, it is imprisonment that rises to the level of torture, given both the conduct of the medical staff in the government-run hospital as viewed in aggregate with... So if we were to remand on the question of the doctors, are you standing by the record? Are you claiming that the record is sufficient, that the board can decide the CAD question? Or are you asking... Or is there still something pending underneath that would allow you to do further discovery? No, Your Honor. We think that the remedy is remand and that the record is appropriate. Do you have anything in the record that reflects conversations that Ms. Marenko had with doctors or anything that would show that the doctors' intent? I think the record shows what the doctors intended to do, that they intended to restrain her because they were concerned that she may have an abortion or she may commit suicide. And what's the evidence for that? I read her testimony. Yeah, that she talks about that. But she's also testifying that she was sedated. If she was sedated, how does she know what the motivation of the doctors was? Obviously, well, this is what she was told later. She obviously, while she was sedated, did not have that discussion. And she learned this about the doctors from what? My understanding is... She was sedated for five months or three months and then went back twice a week, Wednesdays and Saturdays, for another two months. Was she seeing the same doctors? I don't know that the record reflects that, Your Honor. Okay, so how does she know what the doctors' intent was for the first three months? Well, in addition to her discussions with the hospital after the fact, when they told her that she was pregnant and she asked her why she hadn't been told that she was pregnant, that she received this answer, I'd also point out that the country... But where did she receive the answer from? A hospital administrator? A nurse? A doctor? I don't recall the answer to that I kind of have to wonder what it is that the board is supposed to do with this record. How can they possibly find a cat claim on that record when she has no evidence of any individual doctor having said, yeah, we sedated you in order to prevent you from having an abortion for no other reason? I would appoint, in addition to Ms. Marenko's testimony, I would point the court to the country conditions evidence in the record, which is quite extensive and which the board and the and does it say anything about doctors? It does talk about abortion being illegal in El Salvador and that... Okay, that's not too surprising. This is a Catholic country. Not a surprising development. It actually is a relatively recent development. It wasn't true that abortion was addressed in the particular social condition or social group. I see that my time has more than expired. I'm happy to answer more questions if the court desires. No, I think we're done. We thank both counsel for the very helpful arguments. The case just argued will be submitted. Thank you, Your Honor. Thank you. Thank you, Your Honor.
judges: Bybee, Bastian, Collins